UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIPE TRADES DISTRICT COUNCIL #36 PENSION TRUST FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GARY MARSH,<br><br>Defendant. | Case No.16-cv-05263-HRL<br><br>**ORDER THAT CASE BE REASSIGNED TO A DISTRICT JUDGE**<br><br>**REPORT AND RECOMMENDATION**<br><br>Re: Dkt. No. 30 |

Plaintiffs Pipe Trades District Council No. 36 Health and Welfare Trust Fund, Pipe Trades District Council No. 36 Pension Trust Fund, Pipe Trades District Council No. 36 Journeyman and Apprenticeship Training Trust Fund, Central California Pipe Trades Industry Labor-Management Cooperation Committee Trust Fund, International Training Fund, and Mechanical Contractors Council of Central California (collectively, "Plaintiffs") sue defendants Gary Marsh, d/b/a Marsh Industrial Refrigeration ("Marsh"), Suretec Indemnity Company ("Suretec"), and Old Republic Surety Company ("Old Republic") for breach of contract (failure to pay fringe benefit contributions), accounting, and a claim on a contractor's license bond. Dkt. No. 1. Plaintiffs have settled with Suretec and Old Republic, against whom the contractor's license bond claim was directed. Dkt. Nos. 1, 33, 34. Marsh has failed to file an answer or otherwise defend in this action, and the Clerk entered his default on November 10, 2016. Dkt. No. 15. Plaintiffs move the court for default judgment against Marsh on the breach of contract claim. Dkt. No. 30.

Marsh has not consented to the undersigned's jurisdiction. As a result, the undersigned orders that this case be reassigned to a district judge. The undersigned further recommends, for the reason stated below, that the motion for default judgment be granted.

**BACKGROUND**

Plaintiffs, except for the Mechanical Contractors Council of Central California ("MCC"), are employee benefit plans within the meaning of the Employee Retirement Income Security Act ("ERISA"). Dkt. No. 1, ¶ 4. MCC is an association of employers authorized by its members to negotiate and enter into Master Labor Agreements ("MLA"). *Id.* at ¶ 5. Plaintiffs allege that defendant Marsh is an employer working in the construction industry who has signed such an MLA. *Id.* at ¶ 6, Dkt. No. 30, Yanko Decl., Ex. A. In this MLA, Marsh agreed to "remit certain fringe benefits for . . . covered work" on a monthly basis, to withhold money from employees' paychecks and remit it to vacation funds established for each employee, and to contribute to "contract administration and hiring hall expenses" incurred by the Plaintiffs in administering the agreements Marsh signed. Dkt. No. 1, ¶ 30; Dkt. No. 30, Yanko Decl., Ex. B (MLA, Art. XIV, § 2; Art. XVI, § 1; Art. XXI, §§ 1, 3; Art. XXXII, § 1). Plaintiffs allege that Marsh failed to remit fringe benefit contributions for the months of May through December 2015 and April through June 2016. Dkt. No. 1, ¶ 12. The total principal contributions owed for these periods was, at the time the complaint was filed, and accounting for a partial remittance of $10,000, $249,566.36. Dkt. No. 1, ¶ 12. The MLA also provides for liquidated damages in the amount of 20% of the delinquent contributions, as well as pre-judgment interest of 12% per annum on the delinquent contributions and the liquidated damages. Dkt. No. 1, ¶¶ 13, 14; Dkt. No. 30, Yanko Decl., Ex. B (MLA, Art. XIX, §§ 1-3; Art. XXI, § 3; Art. XXXII, §§ 1, 7).

Plaintiffs filed the complaint in this action on September 14, 2016, Dkt. No. 1, and completed service upon Marsh on October 5, 2016 (by leaving a copy of the summons and complaint with his wife at their residence and mailing copies of the same to Marsh), Dkt. No. 11. After Marsh failed to timely file an answer, Plaintiffs requested that the Clerk enter his default, which the Clerk did on November 10, 2016. Dkt. Nos. 13, 15. Plaintiffs moved the court for default judgment on January 12, 2017. Dkt. No. 30. In their motion, Plaintiffs announced that they "are foregoing the accounting" claim, and request a default judgment on the sole remaining claim for breach of contract (failure to pay fringe contributions) in the amount of $340,758.42. *Id.* This amount represents (1) delinquent fringe benefit contributions in the amount of $259,566.36, (2) liquidated damages on those delinquent contributions of $51,913.27, and (3) interest on both

2

the delinquent contributions and liquidated damages of $43,278.79, less (4) credits for payments made of $14,000.00. *Id.* After the court indicated, in an interim order, a flaw in Plaintiffs' figures involving the $10,000 partial remittance submitted before the filing of the complaint and its effect on the calculations of interest and liquidated damages, Plaintiffs re-submitted updated calculations. Dkt. No. 40. Plaintiffs now request a total of $347,444.58, representing (1) unpaid principal contributions of $245,566.36 (which incorporates the $14,000 partial remittance), (2) liquidated damages of $49,913.27, and (3) interest of $51,964.94. *Id.* Plaintiffs further state that they will move separately for attorneys' fees and costs. *Id.*

In support of their motion, Plaintiffs submitted declarations from attorney Henry Chiu and plan administrator Nancy Yanko. *Id.* Chiu states that Marsh is not an infant, an incompetent person, or an individual subject to relief under the Servicemembers Civil Relief Act (SCRA), and he supports the latter assertion by providing the results of his search on the SCRA website. Dkt. No. 30, Chiu Decl., ¶¶ 4, 5; Ex. B. Yanko attaches to her declaration the document signed by Marsh binding him to the MLA, the MLA itself, and copies of the "Employer's Report of Contributions" submitted by Marsh for the months in which he failed to remit fringe benefits, providing evidence of the payments Marsh failed to remit. Dkt. No. 30, Yanko Decl., Exs. A, B, C. Yanko's declaration also describes the calculations leading to the amounts sought in the motion. *Id.*, ¶¶ 6, 7, 12, 13; Dkt. No. 40, Yanko Decl. (II), Ex. F.

**LEGAL STANDARD**

Pursuant to Rule 55(b), the court may enter a default judgment against a party whose default has been entered. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1225 (N.D. Cal. 2005) (citing Fed. R. Civ. P. 55). In *Eitel v. McCool*, the Ninth Circuit described seven factors a district court may consider in deciding whether to grant default judgment. 782 F.2d 1470, 1471-72 (9th Cir. 1986). These seven factors are: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Id.* In general,

when reviewing a motion for default judgment, the court accepts the factual allegations of the complaint as true, except for those related to the amount of damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

**DISCUSSION**

District courts have "an affirmative duty" to review whether subject-matter and personal jurisdiction exist before entering default judgment. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). This court has subject-matter jurisdiction over Plaintiffs' claim because it arises under federal law. *See* 28 U.S.C. §1331; 29 U.S.C. §§ 1132, 1145. The undersigned is also satisfied that this court has personal jurisdiction over Marsh. The courts within a state have personal jurisdiction over individuals who reside within the state and over those who have sufficient minimum contacts with the state. *See, e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2853-54 (2011). Plaintiffs allege that Marsh is engaged in the construction industry in California, that he has entered into an MLA in California, and that he has paid employees to work (and failed to remit certain benefit contributions to employees) in California. Dkt. No. 1. The court sees no reason on the record to doubt these allegations. A party must also be properly served before a federal court may exercise personal jurisdiction over that party. *See Jackson v. Hayawaka*, 682 F.2d 1344, 1347 (9th Cir. 1982). Plaintiffs filed proof that Marsh was properly served. Dkt. No. 11. The undersigned therefore concludes the court has personal jurisdiction over Marsh and subject-matter jurisdiction over Plaintiffs' claim.

Plaintiffs have fairly pled meritorious claims against Marsh. 29 U.S.C. Section 1145 of ERISA states that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." In their complaint, Plaintiffs allege, and the court accepts as true, that they (except for MCC) are ERISA employee benefit plans, and that MCC is a party to an MLA. Dkt. No. 1, ¶¶ 4, 5, 6, 10. Plaintiffs further allege that Marsh is an employer engaged in the construction industry, and that he is thus "engaged in commerce" and an employer under ERISA. Dkt. No. 1, ¶ 6; 29 U.S.C. § 1003(a). As described above, Plaintiffs allege that

Marsh signed an MLA requiring him to remit fringe benefit contributions and certain other payments on a monthly basis,[1] that Marsh performed services in the jurisdictions covered by the MLA that triggered his responsibility to remit these payments, and that Marsh failed to remit these payments for two periods in 2015 and 2016. Dkt. No. 1, ¶§ 6, 10, 11, 12, 19, 21; Dkt. No. 30, Yanko Decl., ¶ 6, Exs. A, B, C.

When an employer fails, as Marsh has, to make required contributions pursuant to 29 U.S.C. Section 1145 and the terms of the plan to which the employer is bound, 29 U.S.C. Section 1132(g) permits ERISA plans to initiate civil actions to enforce Section 1145 and mandates that they recover: "(A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A), [and] (D) reasonable attorney's fees and costs of the action . . . ." *See also Operating Eng'rs Pension Trusts v. A-C Co.*, 859 F.2d 1336, 1342 (9th Cir. 1988) (stating that the award described in Section 1132(g) is mandatory). The MLA similarly obliges delinquent employers to pay the award described in Section 1132(g). Dkt. No. 30, Yanko Decl., Ex. B (MLA Art. XIV, § 2; Art. XVI, § 1; Art. XIX, §§ 1-3; Art. XXI, §§ 1, 3; Art. XXXII, §§ 1, 7).

Plaintiffs allege a total principal balance of delinquent contributions of $259,566.36. Plaintiffs bear the burden of proving these damages through testimony or affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005). Here, Plaintiffs have submitted the Employer's Report of Contributions submitted by Marsh for the months for which Marsh is delinquent. Dkt. No. 30, Yanko Decl., ¶ 6, Ex. C. These reports are signed by Debra Marsh as the CFO of Marsh Industrial Refrigeration. Dkt. No. 30, Yanko Decl., Ex. C. Each report includes a signed "Employer Certification" stating that the information contained therein is accurate and that the employer "agrees to be bound" by the terms of

---

[1] Though Plaintiffs initially submitted an MLA with an effective date different from the date on the document that Marsh executed, Plaintiffs' supplemental brief satisfies the undersigned that Marsh is bound by the MLA. Dkt. No. 40, Yanko Decl. (II), ¶¶ 7, 8, Exs. D, E.

applicable trust agreements, including provisions related to liquidated damages for delinquencies. *Id.* The court summed the delinquent payments detailed in each report submitted and arrived at a figure slightly greater than Plaintiffs' figure; but, as plaintiffs cannot receive relief that has not been requested in their complaint, the court will accept Plaintiffs' total of $259,566.36.

As provided by the MLA, Plaintiffs request liquidated damages of 20% on this sum, or $49,913.27.[2] Additionally, Plaintiffs request interest on both the liquidated damages and unpaid principal at a rate of 12% per annum, or $51,964.94. Adding the unpaid contributions less the $14,000 of partial remittances from Marsh ($245,566.36) to the liquidated damages ($49,913.27) and interest ($51,964.94), the court arrives at a final figure of $347,444.58.[3]

Turning now to the *Eitel* factors, the undersigned has addressed the substantive merits of Plaintiffs' claim and the sufficiency of their complaint above and finds that these factors weigh in favor of awarding Plaintiffs a default judgment. Regarding the possibility of prejudice to the plaintiff(s), if the court were to deny this motion, Plaintiffs would have no other means of obtaining recovery. While the sum of money at stake is relatively large (and default judgments are disfavored when large or unreasonable sums are at stake), the amount of damages is well-supported by the Plaintiffs' declarations and evidence, and it is reasonable in light of the defendant's actions. As to the possibility of a dispute concerning material facts, the defendant has not filed an answer, and so a dispute about the facts submitted above (and supported by Plaintiffs' evidence) is unlikely. Similarly, it is unlikely that the default was due to excusable neglect. Defendant was properly served and indicated to the court, after attending the initial Case Management Conference in this action, that he intended to offer "no contest for the default."

---

[2] Plaintiffs initially requested liquidated damages of $51,913.27. However, Marsh submitted $10,000 as a partial remittance before the complaint was filed. Dkt. No. 30, Yanko Decl., ¶ 13. Section 1132's liquidated damages provision applies the liquidated damages percentage to the amount of "unpaid contributions." "[C]ourts have interpreted 'unpaid contributions' to mean contributions owing and unpaid at the time the lawsuit is filed." *Bd. Of Trustees of the Boilermaker Vacation Trust*, 389 F. Supp. 2d at 1125-26 (quoting *Bd. Of Trustees of the Sheet Metal Workers v. General Facilities, Inc.*, 2003 WL 1790387, at *2 (N.D. Cal. Mar. 31, 2003)). Thus, upon the court's request, Plaintiff's submitted revised calculations applying the liquidated damages to the total amount of unpaid contributions *less* the $10,000 Marsh paid before this lawsuit was filed (or $249,566.36) and arrived at the liquidated damages figure of $49,913.27. Dkt. No. 40.

[3] Plaintiffs have stated that they will move for attorneys' fees and costs separately.

Finally, though the Federal Rules of Civil Procedure favor decisions on the merits, such a judgment is not practical when a defendant has failed to defend an action as Marsh has here. The *Eitel* factors, as a whole, weigh in favor of granting Plaintiffs' motion for default judgment.

## CONCLUSION

The undersigned is persuaded that (1) Plaintiffs have fairly pled a meritorious claim for breach of contract (failure to pay fringe benefit contributions) under ERISA and the terms of the MLA signed by Marsh and (2) the other *Eitel* factors support entry of default judgment. The undersigned therefore recommends an entry of judgment in favor of Plaintiffs for $347,444.58. Any party may serve and file objections to this Report and Recommendation within fourteen days after being served. 28 U.S.C. § 636; Fed. R. Civ. P. 72.

**SO ORDERED AND RECOMMENDED.**

Dated: 5/9/2017

HOWARD R. LLOYD
United States Magistrate Judge